ADAM L. BRAVERMAN
United States Attorney
BRUCE C. SMITH
Assistant U.S. Attorney
California State Bar No. 078225
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8266
E-mail: bruce.smith@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      v.<br><br>$13,340.00 IN U.S. CURRENCY,<br><br><br>                    Defendant. | Case No. '18CV1571 W   NLS<br><br>COMPLAINT FOR<br>FORFEITURE |

By way of complaint against the defendant, $13,340.00 IN U.S. CURRENCY ("$13,340 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1.   This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355, and Title 21, United States Code, Section 881(a)(6), because the defendant $13,340 in currency constitutes monetary instruments, money, or personal property furnished or intended to be furnished in exchange for controlled substances, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

//

USAO:2018v00177:BCS/ak

2.   Furthermore, this Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a), and Title 31, United States Code, Section 5332(c), because the defendant $13,340 in currency, constitutes property involved in a violation of Title 31, United States Code, Section 5332(a).

3.   Venue is proper in this district pursuant to Title 28, United States Code, Section 1395 because the defendant $13,340 in currency was found in this district.

4.   On Tuesday April 10, 2018, at approximately 9:38 a.m., in the Southern District of California, at the Tecate Port of Entry ("POE"), Saif Razooky ("Razooky"), a United States citizen, entered the United States from Mexico as a pedestrian.

A.   When Razooky applied for entry into the United States from Mexico, he did not declare to U.S. Customs and Border Protection officers on duty at the POE he was bringing into the United States more than $10,000.00 in U.S. currency or monetary instruments.

B.   Razooky was permitted admittance into the United States, passed through the POE, and proceeded north into the town of Tecate, California.

5.   Later, on Tuesday April 10, 2018, just after 10:00 a.m., in the Southern District of California, at the United States Border Patrol ("USBP") Highway 94 Checkpoint near the community of Jamul, Razooky arrived as the driver and sole occupant of a 2016 Ford Explorer SUV with California license plates.

A.   Razooky arrived at the USBP Highway 94 Checkpoint approximately twenty-five (25) minutes after passing through the Tecate POE as a pedestrian.

B.   The Highway 94 USBP Checkpoint is located approximately fifteen (15) miles from the Tecate POE.

6.   When Razooky arrived at the USBP Highway 94 Checkpoint, all checkpoint warning signs and lights were activated and operational.

7.   When Razooky arrived at the USBP Checkpoint in the 2016 Ford Explorer SUV, USBP Agent Sandoval was in his USBP uniform, accompanied by his trained and certified USBP drug and concealed human detection dog, "Samson."

A.   USBP Agent Sandoval and Samson were in the pre-primary area, conducting pre-primary examinations of arriving vehicles.

8.   USBP Agent Sandoval and his USBP drug and concealed human detection dog Samson were trained and certified as a dog handler and detection dog team.

A.   Samson was specially trained to display a behavior or "alert" when he encountered the scents of a variety of controlled substances or concealed humans.

B.   Agent Sandoval was trained and experienced in recognizing Samson's trained behaviors or alerts.

9.   When Razooky arrived at the vehicle primary position at the USBP Checkpoint, he was greeted by USBP Vaiasuso, also in full USBP uniform.

//

//

3

10. As Razooky stopped at the primary position at the USBP Checkpoint, USBP Agent Sandoval and Samson passed by the 2016 Ford Explorer SUV.

11. Agent Sandoval noticed Samson alerted to Razooky's vehicle.

12. Agent Sandoval told Agent Vaiasuso of Samson's alert, and suggested Razooky and the Ford Explorer SUV be referred to vehicle secondary.

13. Razooky and the Ford Explorer SUV were referred to the nearby vehicle secondary area for a more thorough inspection.

14. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew Highway 94, between the United States / Mexico international border and San Diego, California, was a stretch of highway frequently relied upon by northbound smugglers of illegal controlled substances and undocumented immigrants.

15. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew the northbound lanes of Highway 94, between San Diego, California and the United States / Mexico international border, was a stretch of highway frequently relied upon by transporters and smugglers of proceeds, in the form of U.S. currency and other monetary instruments, from the sale and distribution of illegal controlled substances and from fees paid for the smuggling and transportation of undocumented immigrants.

16. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew individuals

and organized criminal groups smuggled illegal controlled substances and undocumented immigrants from Mexico into the Southern District of California.

17. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew the illegal controlled substances were then transported to San Diego, California and beyond for distribution and sale.

   A.   The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew the sale of illegal controlled substances was virtually always conducted as an exchange of drugs for currency.

18. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew smuggled undocumented immigrants were frequently transported to San Diego, California and beyond.

   A.   The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and knew upon delivery to their destination, the smuggled undocumented immigrants or their relatives, paid the smugglers and transporters with currency.

19. The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and had experience in highway smuggling interdiction operations and were familiar with smuggling trends and techniques.

   A.   The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and were sensitive to and observant of common or typical behaviors of individuals engaged in the transportation of undocumented immigrants,

controlled substances, and currency generated by those illegal enterprises.

    B.   The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and had experience recognizing typical or favored vehicles used for smuggling.

    C.   The USBP agents on duty at the USBP Highway 94 Checkpoint were trained and experienced, and had a history of successfully detecting and intercepting vehicles engaged in transporting undocumented immigrants, controlled substances, and currency generated by those illegal enterprises.

20. Upon arrival at the vehicle secondary inspection area, Razooky was greeted by USBP Agent Garcia, also in full uniform.

    A.   Razooky identified himself as a United States citizen.

    B.   Razooky told Agent Garcia he spent the previous night in Tecate, Baja California, Mexico.

    C.   Razooky told Agent Garcia he returned to the United States from Mexico via the Tecate POE as a pedestrian.

    D.   Razooky told Agent Garcia he and his vehicle were referred to vehicle secondary because a dog alerted to the vehicle.

    E.   Razooky suggested to Agent Garcia the reason for the dog's alert was Razooky smoked marijuana, a Schedule I Controlled Substance, every day.

    F.   As Razooky spoke, Agent Garcia noted Razooky appeared to be highly agitated and anxious.

//

21. Razooky granted permission to Agent Garcia to search the Ford Explorer SUV.

22. As Razooky stepped out of the Ford Explorer SUV, he told Agent Garcia there was a bag underneath the rear seat.

    A. Razooky told Agent Garcia the bag contained personal property.

    B. Razooky asked to remove the bag from the vehicle and hold it while Agent Garcia searched the vehicle.

    C. Razooky granted permission to Agent Garcia to examine the contents of the bag before removing it from the vehicle.

23. Agent Garcia looked into the bag and observed multiple bundles of U.S. currency.

    A. One bundle of currency was in a smaller white bag, labeled "High Times Cannabis Club."

    B. The other bundles of currency were wrapped and secured with rubber bands.

24. The currency discovered inside the bag underneath the rear seat of the Ford Explorer SUV was counted.

    A. The grand total of the currency inside the bag was $13,340.00.

    B. The $13,340.00 discovered inside the bag underneath the rear seat of the Ford Explorer SUV is the defendant $13,340 in currency.

25. Razooky told Agent Garcia the defendant $13,340 was from his father's liquor store in El Cajon, California.

    A. Razooky told Agent Garcia his father did not know Razooky took the defendant $13,340 in currency.

26. Razooky told Agent Garcia the defendant $13,340 was not proceeds from the sale of marijuana.

27. Agent Garcia discovered handwritten ledgers and documents with references to sales and distribution of marijuana, a Schedule I Controlled Substance.

28. When Agent Garcia asked Razooky to explain obvious references in the documents to marijuana and marijuana products, Razooky insisted the documents pertained to candy sold in his father's liquor store.

29. Agent Garcia was trained and experienced, and was familiar with terms and words commonly used by those engaged in the sale and distribution of marijuana.

30. Razooky then told Agent Garcia the defendant $13,340 in currency represented proceeds from a commercial marijuana distribution business known as "Troy Smoke Shop."

    A. Razooky said he was an employee at the Troy Smoke Shop.

    B. Razooky told Agent Garcia on the day prior, Razooky was to have taken the defendant $13,340 in currency from the Troy Smoke Shop and deposited it in a bank known as "Canna Bank."

    C. Razooky told Agent Garcia he did not take the defendant $13,340 in currency to Canna Bank, but went to Tecate, Mexico.

    D. Razooky told Agent Garcia he also was an employee of a marijuana delivery service known as "Gas House 64."

//

//

E.    Razooky told Agent Garcia some of the defendant $13,340 in currency represented proceeds from marijuana deliveries conducted by Gas House 64.

31. A search of the interior spaces of the 2016 Ford Explorer SUV Razooky was driving resulted in the seizure of approximately 2.55 grams of marijuana, a Schedule I Controlled Substance.

32. At approximately 2:45 p.m., Razooky and the Ford Explorer SUV left the USBP Checkpoint and continued on their journey.

33. The defendant $13,340 in currency was seized for forfeiture to the United States.

<u>Count 1</u>

34. Paragraphs 1 through 33 are hereby incorporated herein as if alleged in full.

35. The defendant $13,340.00 in U.S. Currency constitutes monetary instruments furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

36. Alternatively, the defendant $13,340.00 in U.S. Currency constitutes proceeds of or proceeds traceable to an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

37. Alternatively, the defendant $13,340.00 in U.S. Currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

//

38. As a result of the foregoing, the defendant $13,340.00 in U.S. Currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, Section 881(a)(6).

39. The defendant $13,340.00 in U.S. Currency is deposited within the jurisdiction of this Court.

<u>Count 2</u>

40. Paragraphs 1 through 33 are hereby incorporated herein as if alleged in full.

41. The defendant $13,340.00 in U.S. currency constitutes property involved in a violation of Title 31, United States Code, Section 5332(a), bulk cash smuggling of more than $10,000.00 in monetary instruments into the United States from Mexico.

42. As a result of the foregoing, the defendant $13,340.00 in U.S. currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 31, United States Code, Section 5332(c).

//
//
//
//
//
//
//
//
//
//

43. The defendant $13,340.00 in U.S. Currency is deposited within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $13,340.00 in U.S. Currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: July 11, 2018

ADAM L. BRAVERMAN
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$13,340.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)

**'18CV1571 W   NLS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  
☐ 2 Removed from State Court  
☐ 3 Remanded from Appellate Court  
☐ 4 Reinstated or Reopened  
☐ 5 Transferred from another district (specify)  
☐ 6 Multidistrict Litigation  
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1355 and 21 U.S.C. Section 881(a)(6)

Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE
07/11/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ Bruce C. Smith

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## VERIFICATION

I, Nicole Caughey, state and declare as follows:

1. I am a special agent with U.S. Homeland Security Investigations ("HSI"), and am one of the agents assigned to this investigation.

2. I have read the foregoing Complaint For Forfeiture and know its contents.

3. The facts set forth in the Complaint For Forfeiture are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the Complaint For Forfeiture to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on July __//__ ,2018.


_____
NICOLE CAUGHEY, Special Agent
HOMELAND SECURITY INVESTIGATIONS